STATE OF NORTH CAROLINA v. ERVIN WILLIAMSON

No. 117A92

(Filed 18 December 1992)

1. **Homicide §§ 251, 243 (NCI4th) — murder — premeditation and deliberation — evidence sufficient**

There was sufficient evidence of premeditation and deliberation in a first degree murder prosecution where defendant and two companions, Logan and Baker, were in Wampee, South Carolina several hours before the killing; defendant repeatedly expressed his intent to kill the victim because he was "messing" with defendant's girlfriend and because of statements the victim made about the defendant having oral sex with another girl; after the three men returned to the Arcade in Chadbourn, North Carolina, the victim walked into the Arcade

and defendant told the victim that he would "f--- him up" and then "kill him"; Baker and Logan broke up the argument and the victim left the Arcade; defendant told Baker and Logan that he was going to end up killing the victim; Baker left the Arcade and returned a few minutes later and told defendant that the victim was talking about him; defendant asked where his gun was and stated that he was going over to The Tracks and "f--- this motherf---er up"; someone told defendant his gun was under the seat of a car; defendant drove to where the victim was standing; defendant jumped out of the car with his gun in his hand and asked the victim why he was "running his mouth"; the victim, who was unarmed, told defendant that he had not said anything; defendant then cocked his pistol, raised it, and shot the victim in the chest; the victim fell against a pole, regained his balance, and ran around the building, and defendant ran behind him and shot again.

**Am Jur 2d, Homicide §§ 147, 155, 275, 438, 439.**

2. **Evidence and Witnesses § 758 (NCI4th)— murder—opinion of paramedic—other evidence of same import introduced**

There was no prejudicial error in a murder prosecution from the introduction of a paramedic's testimony identifying the wounds on the body of the deceased as an entrance and exit wound where the defendant waived the assignment of error in his brief by admitting that the same evidence was correctly introduced at a later point in the trial and by waiving the assignment of error during oral arguments.

**Am Jur 2d, Appeal and Error §§ 652, 670; Homicide § 560.**

3. **Evidence and Witnesses § 3161 (NCI4th)— statements of witness to SBI agent—noncorroborative testimony—no error**

There was no error in a murder prosecution in allowing the introduction of an SBI agent's testimony containing statements made by a witness to the agent where defendant contended that the testimony was noncorroborative. Defendant initially made a general objection to the agent reading his notes, the objection being contingent upon the statement being used for corroborative purposes, the State acknowledged that the statement was being read for corroborative purposes, and the judge instructed the jury that the statement was

STATE v. WILLIAMSON

[333 N.C. 128 (1992)]

being used solely for corroborative purposes. Defense counsel's second objection dealt with a misconception that the agent was inserting his own version of what defendant had meant, but the trial court overruled the objection and gave another instruction on corroborative testimony and the agent clarified the matter when he continued his testimony. Defendant's last objection was on the grounds that a portion of the statement to the agent did not corroborate the witness's testimony, but the agent's reading of the statement clearly corroborated the witness's testimony during cross-examination by defense counsel.

Am Jur 2d, Homicide §§ 493, 496, 519, 539; Trial §§ 1213, 1218, 1288.

4. Evidence and Witnesses § 688 (NCI4th) — murder — testimony improperly admitted for impeachment purposes — assignment of error based solely on noncorroboration — impeachment issue not properly presented

A contention that a prior consistent statement was improperly admitted for impeachment purposes in a murder prosecution was not properly presented on appeal because the assignment of error dealing with the testimony was based solely on noncorroboration.

Am Jur 2d, Appeal and Error §§ 515, 654, 655, 670; Witnesses § 1012.

5. Criminal Law § 553 (NCI4th) — noncorroborative testimony — defendant's false claim of self-defense — mistrial denied

There was no abuse of discretion in a murder prosecution where the court denied defendant a mistrial after the admission of noncorroborative statements which indicated that defendant wanted to set up a false claim of self-defense. After the trial judge sustained defendant's objection, he recessed the jury while defendant made his motion for a mistrial, correctly pointed out that earlier testimony had indicated that defendant discussed fabricating a defense, and, based on the judge's own observation of the jury, stated that he was not convinced that defendant could not get a fair trial.

Am Jur 2d, Appeal and Error §§ 772, 774; Homicide §§ 147, 539, 560.

STATE v. WILLIAMSON

[333 N.C. 128 (1992)]

6. **Criminal Law § 685 (NCI4th)— noncorroborative testimony— mistrial denied—no curative instruction—no request for instruction**

The trial court did not err in a murder prosecution by not giving a curative instruction after denying defendant's motion for a mistrial following noncorroborative statements which indicated that defendant wanted to fabricate a defense. A trial court does not err by failing to give a curative jury instruction when, as here, it is not requested by the defense.

**Am Jur 2d, Appeal and Error §§ 672, 673, 696; Homicide §§ 496, 519.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment upon defendant's conviction of first-degree murder entered by Fullwood, J., at the 26 August 1991 Criminal Session of Superior Court, Columbus County. Heard in the Supreme Court 2 November 1992.

*Lacy H. Thornburg, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*Junius B. Lee, III, for defendant-appellant.*

MEYER, Justice.

On 14 May 1990, defendant, Ervin Williamson, was indicted for the first-degree murder of Danny Lee Keel. Defendant was tried noncapitally in the Superior Court, Columbus County, in August 1991 and was found guilty. The trial court thereafter imposed the mandatory life sentence.

The evidence presented by the State at trial tended to show the following. On the afternoon of 3 April 1990, defendant, Tyrone Logan, and Tony Baker drove from Columbus County, North Carolina, to Wampee, South Carolina, in a blue Chevrolet Chevette owned by defendant's brother, Waylon Williamson. While in Wampee, defendant expressed animosity towards Danny Lee Keel, the victim. Defendant told Logan that "he was going to kill [the victim]" because the victim was "messing" with his girlfriend. Just after dark, the three men decided to drive back to Chadbourn, North Carolina, to defendant's family business, Williamson's Arcade ("the Arcade"), located in a part of town called The Tracks.

### STATE v. WILLIAMSON

[333 N.C. 128 (1992)]

While defendant, Logan, and Baker were playing pool, the victim walked into the Arcade. Defendant approached the victim, and the two men began arguing. The argument centered around a statement that the victim supposedly made about defendant's engaging in oral sex with someone other than his girlfriend. Defendant told the victim that he was going to "f— him up" and then "kill him." The victim then left the Arcade and walked across the railroad tracks to a building on the other side of the street. Baker also left the Arcade but returned a few minutes later and told defendant that "Danny over there talking s— about you." Defendant responded, "Where my gun at? . . . I'm going over there and f— this motherf—er up." After an unidentified person told defendant that his gun was under the seat in the blue Chevette, he jumped in the car and drove across the railroad tracks to where the victim was standing near a building. Logan and Baker followed defendant across the railroad tracks and saw him get out of the car.

Defendant had a 9-millimeter pistol in his hand and said to the victim, "Man, why are you over here talking, running your mouth." At this point, defendant raised the weapon and shot the victim in the chest. The victim fell back against a pole and then ran around the building. Defendant ran after the victim and fired another shot at him. Defendant then returned to the Arcade. After running up to the front yard of a mobile home, the victim knocked on the door and told the owners that he was hurt and to call the police. The victim then died in the front yard. Upon arriving at the scene, investigating officers found a 9-millimeter pistol and a belt pouch containing fifty-eight vials of crack cocaine near the victim's body.

An autopsy of the victim's body revealed that the victim bled to death as the result of a gunshot wound to the chest. The bullet entered the victim's chest approximately two inches from the midline in the left upper-chest area and exited about five inches from the midline in the left shoulder blade area.

Defendant presented evidence directly contrary to that of the State. He testified that he left the Arcade solely to get something to eat and that he coincidentally saw the victim across the railroad tracks. Defendant and a witness for defendant, Kenneth R. McDougald, testified that defendant went across the tracks to make amends with the victim because of their prior argument at the Arcade. Defendant approached the victim and asked him if he were

**STATE v. WILLIAMSON**

[333 N.C. 128 (1992)]

going to let a woman come between them. Both defense witnesses testified that as defendant turned to leave, the victim reached in his pocket and removed a gun. Defendant further testified that at this point, Logan screamed to defendant, "Look out, Ervin, he's fixing to shoot you, man." McDougald also testified that Logan similarly warned defendant. Defendant turned and started to pull his gun, which he testified he carried for protection when he worked at the Arcade. As defendant turned around, he slipped and the pistol fired. He testified that he fired a second time because the victim was pointing a gun at defendant. Defendant fled to safety at the Arcade. McDougald testified that he heard defendant's gun fire twice and that Logan also fired his own gun. McDougald stated that defendant never chased the victim and that the victim had also fired his pistol.

Defendant denied starting the argument at the Arcade and testified that the victim actually started an argument with Logan. Defendant stated that the argument was about Logan's girlfriend, not his own, and that he only became involved as the argument became more heated.

Additional facts will be discussed as necessary for the proper disposition of the issues raised by defendant.

[1] Defendant first argues that the trial court erred in submitting a possible verdict of first-degree murder to the jury because there was no showing of premeditation and deliberation. According to defendant, the evidence that defendant made statements to Logan regarding his intent to kill the victim had no causal relationship with the events leading up to the victim's death and were separated in time to such a degree as to make their relevance suspect. We disagree.

In reviewing challenges to the sufficiency of the evidence, this Court views the evidence in the light most favorable to the State, and any contradictions or discrepancies are properly left for the jury to resolve. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). To establish premeditation, the State must prove that the killing was thought out beforehand for some length of time, however short, but no particular length of time is necessary. *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991). To establish deliberation, the State must prove that the defendant intended to kill, that the killing was carried out in a "cool state of blood" in furtherance of a fixed design for revenge, or that

the killing was carried out to accomplish an unlawful purpose, not under the influence of a violent passion suddenly aroused by lawful or just cause or legal provocation. *Id.* However, in determining whether deliberation was present, the term "cool state of mind" does not require a total absence of passion or emotion. *State v. Vause,* 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991).

The evidence presented in this case was clearly sufficient to allow the jury to find that defendant killed the victim with premeditation and deliberation. Several hours before the killing, when defendant, Logan, and Baker were in Wampee, South Carolina, defendant repeatedly expressed his intent to kill the victim because he was "messing" with defendant's girlfriend and because of statements the victim had made about the defendant having oral sex with another girl. After the three men returned to the Arcade in Chadbourn, North Carolina, the victim walked into the Arcade; when defendant saw the victim, he told him that he would "f--- him up" and then "kill him." Baker and Logan broke up the argument, and the victim then left the Arcade. Defendant also told Baker and Logan that he was going to "end up killing [the victim]." Baker then left the Arcade and returned a few minutes later and told defendant that the victim was "over there talking s--- about [him]." The defendant asked where his gun was and stated that he was going over to The Tracks and "f--- this motherf---er up." Someone told defendant that his gun was under the seat in the blue Chevette. Defendant proceeded to get into the Chevette and drive across The Tracks to where the victim was standing. Defendant jumped out of the car, with the gun in his hand, and asked the victim why he was "running [his] mouth." The victim, who was not armed, told the defendant that he had not said anything. Defendant then cocked the 9-millimeter, raised it, and shot the victim in the chest. The victim fell back against a pole, regained his balance, and ran around the building; defendant ran behind him and shot at him again.

This evidence, when viewed in the light most favorable to the State, is more than sufficient to support the jury's findings of premeditation and deliberation. Defendant's contention to the contrary is without merit.

In his second assignment of error, defendant argues that the trial court erred in allowing the State to introduce, over defendant's

objection, two photographs of the victim's body. During oral arguments, defendant conceded that this assignment was groundless and waived this assignment of error.

[2]  Defendant next assigns as error that the trial court committed prejudicial error in allowing the State to introduce lay testimony by the paramedic as to the location of the "entry" and "exit" wounds on the victim's body. Defendant contends that the paramedic's testimony identifying the wounds on the body of the deceased as an entrance and an exit wound was clearly beyond the purview of admissible opinion for that witness. Defendant waives this assignment of error by admitting in his brief that "[s]ince this same evidence was ultimately introduced, correctly, on the testimony of Dr. Robert Leslie Thompson, at a later point in the trial, this error cannot, in good faith, be said to be prejudicial." In addition, defendant also waived this assignment during oral arguments.

[3]  Defendant next argues that the trial court committed reversible error in allowing the prosecutor to introduce through S.B.I. Agent Matt White noncorroborative testimony contained in statements made by Tyrone Logan to Agent White. In addition, defendant contends that the admission of these statements as impeachment evidence was improper under Rule 607 of the North Carolina Rules of Evidence because the statements did not, in fact, impeach.

The first basis for defendant's assignment of error involves testimony provided by Agent White, who read from his notes statements made to him by Logan, who was with defendant on the day of the murder. When the State first began questioning Agent White about statements that Logan had made to him, defendant lodged an objection, stating, "unless it's for corroborative purposes." The State acknowledged that it was, and the defendant then obtained a jury instruction on corroborative testimony. The trial judge gave the jury the following instruction:

> Ladies and gentlemen of the jury, the testimony of this witness as to what Tyrone Logan told him is being offered for the purpose of corroborating the testimony of Tyrone Logan. You would consider it for that purpose only.

Agent White then began to read his notes regarding Logan's verbal statement made to White on 26 May 1990 at the Columbus County jail. Agent White read the following from his notes:

Tyrone Logan stated that on April the 3rd, 1990, he was in the Williamson Arcade shooting dollar pool. Logan stated that Williamson's Arcade was located in Chadbourn, North Carolina. Logan observed Danny Keel walk into the arcade. [Defendant] was already in the arcade. When [defendant] observed Keel, he asked Keel why he was lying on him. [Defendant] meant why Keel was telling lies about [defendant] to his —

Defense counsel interrupted with an objection, suggesting that Agent White was substituting his own impression as to what defendant meant. The trial judge overruled the objection and gave another corroborative testimony instruction. Agent White then clarified this matter by specifically testifying that "Logan stated that [defendant] meant why was Keel telling lies about [defendant] to his girlfriend who lives in Wampee, South Carolina."

Also, while Agent White was reading his notes as to what Logan told him on 26 July 1990, defendant objected on the grounds that Logan's statement did not corroborate Logan's testimony at trial that "[defendant] wanted Logan and Tony Baker to testify that Keel had pulled a gun." The trial judge overruled the objection and gave yet another instruction on corroborative testimony.

The admissibility of alleged noncorroborative testimony has recently been addressed by this Court in *State v. Harrison*, 328 N.C. 678, 403 S.E.2d 301 (1991), and *State v. Benson*, 331 N.C. 537, 417 S.E.2d 756 (1992). These cases establish the rule that prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony. *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304; *State v. Higgenbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985) (not necessary for evidence to prove precise facts brought out in witness' testimony before evidence deemed corroborative). Furthermore,

"[i]n a noncapital case, where portions of a statement corroborate and other portions are incompetent because they do not corroborate, the defendant must specifically object to the incompetent portions."

*Benson*, 331 N.C. at 548, 417 S.E.2d at 763 (quoting *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304).

Defense counsel objected three times during Agent White's direct examination by the State. Defense counsel initially made

a general objection to Agent White's reading his notes as to Logan's statement of 26 May 1990. This qualified objection was contingent upon the statement being used for corroborative purposes. The State acknowledged that the statement was being read for corroborative purposes, and the judge instructed the jury that the statement was being used solely for corroborative purposes.

Defense counsel's second objection dealt with a misconception that Agent White was inserting his own personal impression of what defendant had meant or actually said rather than reading from his notes a statement from Logan. The trial judge overruled the objection and gave another instruction on corroborative testimony to the jury. When Agent White continued his testimony, he clarified this matter by specifically reading from his notes Logan's statement "that [defendant] meant why was Keel telling lies about [defendant] to his girlfriend who lives in Wampee, South Carolina." Thus, Agent White conclusively rebutted defense counsel's suspicion that White was interjecting his own personal impression rather than reading from Logan's statement.

Also, while Agent White was reading from his notes of Logan's statement of 26 July 1990, defendant again objected, on grounds that the statement that "[defendant] wanted Logan and Tony Baker to testify that Keel had pulled a gun" did not corroborate Logan's verbal testimony. Agent White's reading of the statement clearly corroborated Logan's in-court testimony during cross-examination by defense counsel. When defense counsel asked Logan during cross-examination why his testimony in court was different from what he told defense counsel in his office, Logan stated that defendant had told him to "say it like this [that Keel pulled a gun] here; told me—tried to give me another way to tell it." The two statements of Agent White and Logan, although not exactly the same, are substantially similar. Again, the trial judge correctly overruled the objection and gave yet another instruction on corroborative testimony to the jury.

The only portions of Agent White's testimony regarding Logan's statements that are now subject to review, for anything other than plain error, are those specifically objected to at trial. *State v. Benson*, 331 N.C. 537, 417 S.E.2d 756; *State v. Harrison*, 328 N.C. 678, 403 S.E.2d 301. We find that those portions of Agent White's testimony regarding Logan's statements that were objected to were properly admitted.

[4]   Defendant's contention that Agent White's testimony was improperly admitted for impeachment purposes is without merit. The assignment of error regarding Agent White's testimony was based solely on noncorroboration of the testimony, and the Rule 607 argument was not raised at trial. The scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal. N.C. R. App. P. 10(a); *Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991). Because no assignment of error corresponds to the issue presented, this matter is not properly presented for our consideration.

[5]   As his final argument, defendant contends that the trial judge abused his discretion in denying defendant's motion for mistrial based on the admission of noncorroborative statements which tended to indicate that the defendant wanted to set up an issue of self-defense. Agent White continued to read from his notes of Logan's statement as follows:

> [Defendant] wanted Logan and Tony Baker to testify that Keel had pulled a gun on [defendant] first and that his attorney . . . was going to try and show this. [Defendant] stated that his defense was going to be Keel pointed a weapon first and that [defendant] shot him in self-defense.

The trial judge then, *sua sponte*, sustained the objection to that portion of the statement which dealt with a false self-defense theory. Defendant, relying on N.C.G.S. § 15A-1061, asserts that the trial judge must declare a mistrial "if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1988). Defendant argues that defense counsel was made to appear to have calculatingly designed a defense, and thus, the admission of Agent White's statement irreparably prejudiced his case.

It is well established that the decision as to whether substantial and irreparable prejudice has occurred lies within the sound discretion of the trial judge and that his decision will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991). The decision of the trial judge is entitled to great deference since he is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable. *State v. Hightower*, 331 N.C. 636, 643, 417 S.E.2d 237, 248 (1992).

STATE v. WILLIAMSON

[333 N.C. 128 (1992)]

Applying these principles to the case at bar, we reject defendant's contention that the trial judge should have granted a mistrial. After the trial judge sustained defendant's objection, he recessed the jury while defense counsel made his motion for mistrial, claiming that the challenged testimony made it appear as if the self-defense theory were fabricated. The trial judge, however, correctly pointed out that earlier testimony from Logan had already indicated that defendant discussed fabricating a defense. Furthermore, based on his own close observation of the jury, the trial judge stated that he was "not convinced that . . . the defendant can't get a fair trial, that this defendant still can get a fair trial, and for that reason I am denying the motion." These findings are clearly supported by the record, and we therefore find that the trial judge did not abuse his discretion.

[6] Finally, we disagree with defendant's argument that the trial judge should have given the jury a curative instruction to provide some relief to the defendant if he were not going to grant a mistrial. A trial court does not err by failing to give a curative jury instruction when, as here, it is not requested by the defense. *See State v. Locklear*, 322 N.C. 349, 359, 368 S.E.2d 377, 383 (1988) (trial court did not err by failing to instruct the jury to disregard the emotional display by murder victim's widow, when defendant did not request a curative instruction). Defense counsel could well conclude that a curative instruction would do more harm than good by highlighting the matter in the jury's eyes. *Id.* This assignment of error is overruled.

We have conducted a thorough review of the transcript of the trial and sentencing proceeding, the record on appeal, and the briefs of defendant and the State. We find no error in defendant's trial warranting reversal of defendant's conviction. We further find that the trial court committed no error in the sentence imposed for defendant's noncapital conviction.

NO ERROR.