STATE OF NORTH CAROLINA
v.
MICHAEL STRAUT McNEILL.
No. COA08-228
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Floyd M. Lewis, for the State.
Lisa Skinner Lefler for Defendant.
McGEE, Judge.
A jury found Michael Straut McNeill (Defendant) guilty on 11 October 2007 of misdemeanor possession of stolen goods/property. The evidence contained in the record and presented at trial tends to show the following: Diane Tillman (Ms. Tillman) testified that Defendant and Defendant's wife, Goldie Marsh McNeill (Ms. McNeill), lived with Ms. McNeill's parents next door to Ms. Tillman. Ms. McNeill called Ms. Tillman on 31 January 2007, at approximately 10:30 a.m., and asked if she could use Ms. Tillman's computer. Ms. Tillman allowed Ms. McNeill into her home, and Ms. McNeill began using Ms. Tillman's computer, which was located next to Ms. Tillman's jewelry box in her bedroom. Ms. Tillman left her house about 11:00 a.m., leaving Ms. McNeill in the house. Ms. Tillmanreturned home between 12:00 p.m. and 2:00 p.m., and Ms. McNeill was no longer in the house. Ms. Tillman later discovered jewelry was missing from her jewelry box. Ms. Tillman confronted Ms. McNeill about the missing jewelry the next day, and then she called the police.
Ms. Tillman further testified that she met with Detective Brandon Wall (Detective Wall) of the Lee County Sheriff's Office in March 2007 and accompanied him to Jerry's Pawn Shop in Fayetteville, where they located some of her missing jewelry. Ms. Tillman identified the jewelry in court and it was introduced into evidence, along with the pawn tickets from Jerry's Pawn Shop. Ms. Tillman identified the jewelry as a collection of four rings valued at a combined total of $1,300.00. Ms. Tillman testified that she also accompanied Detective Wall to Parker's Pawn Shop in Fayetteville on 13 March 2007, where they located Ms. Tillman's missing diamond earrings. Ms. Tillman identified a pair of diamond earrings in court with an unspecified value.
Ms. Tillman admitted on cross-examination that she had told police on 13 March 2007 that Ms. McNeill left Ms. Tillman's house on 31 January 2007 at the same time Ms. Tillman left. However, Ms. Tillman also testified that, despite her statement to the police, she and Ms. McNeill did not leave Ms. Tillman's home at the same time. Ms. Tillman denied telling Ms. McNeill's family that someone had stolen some of her jewelry prior to 31 January 2007. On recross-examination, Ms. Tillman testified that some of her jewelry had been missing "little by little" before 31 January 2007 and that"she never could find it until [she] reported it" and accompanied Detective Wall to the two pawn shops where she found most of her missing jewelry.
Frank Fourner (Fourner) testified that he was working at Jerry's Pawn Shop when Defendant entered and pawned six rings at 1:25 p.m. on 31 January 2007. Fourner testified that Defendant handed Fourner the six rings and signed a pawn ticket representing that Defendant was the owner of the rings. In exchange for the six rings, Fourner gave Defendant $45.00. Fourner also testified that Defendant had been a customer of Jerry's Pawn Shop for about two years, and that nothing pawned by Defendant had been found to be stolen prior to the 31 January 2007 transaction.
Detective Wall testified that he had found what he believed to be Ms. Tillman's missing jewelry on "Leadsonline," a state web-based investigative tool. Detective Wall testified that he met with Ms. Tillman in his office on 13 March 2007 and accompanied her to Jerry's Pawn Shop and Parker's Pawn Shop, where she identified her jewelry.
Detective Wall also testified that he interviewed Ms. McNeill at his office on 14 March 2007. Ms. McNeill denied taking Ms. Tillman's jewelry but said she had seen the jewelry while at Ms. Tillman's house. Detective Wall testified that Ms. McNeill finally admitted that she had taken Ms. Tillman's jewelry, put it in her pocket, and then left Ms. Tillman's home.
Defendant moved to dismiss the charge of felony possession of stolen goods, which the trial court denied. Defendant testified that he was a customer of Jerry's Pawn Shop and frequently cashed checks there. Defendant testified that on 31 January 2007, he called Ms. McNeill while she was still at Ms. Tillman's house to arrange for Ms. McNeill to pick him up from work. He testified that Ms. McNeill picked him up from work, they arrived at Jerry's Pawn Shop, and she then handed him the rings to pawn. Defendant said he pawned the rings but that he did not know the rings were stolen. Defendant testified he believed the rings belonged to Ms. McNeill and that she wanted Defendant to pawn them for a few days, until he could buy them back when he received his paycheck the following Friday. Defendant testified that he had no prior convictions, and that he had never before been charged with any crime related to possession of stolen property.
Defendant testified on cross-examination that when Ms. McNeill was arrested on 14 March 2007, that was the first time he learned the rings might be stolen. Defendant said he had never seen the rings prior to 31 January 2007. He also testified that he knew he had to be the owner of the rings in order to pawn them.
With respect to the diamond earrings, Ms. McNeill's aunt testified that she had given the earrings to Ms. McNeill as a gift, and that she purchased the earrings in January 2006 from Zales at Cross Creek Mall in Fayetteville. Ms. McNeill's aunt identified a receipt for the earrings that showed the earrings were purchased on 7 January 2006. A friend of Ms. McNeill's also testified that the diamond earrings belonged to Ms. McNeill.
The jury convicted Defendant of misdemeanor possession of stolen goods/property. The trial court sentenced Defendant to a term of forty-five days in prison. Defendant's sentence was suspended and he was placed on supervised probation for eighteen months. On appeal, Defendant argues that: (1) the trial court lacked jurisdiction to hear this case because of inappropriate venue and (2) the trial court erred by denying Defendant's motion to dismiss when the State failed to meet its burden of proof.

I.
Defendant argues the trial court lacked jurisdiction to hear this matter because the venue for the alleged offense was incorrect. However, none of Defendant's assignments of error correspond to this argument. Defendant's assignment of error regarding venue states that "[t]he trial court committed reversible error in failing to instruct the jury that the possession of stolen goods must have occurred in Lee County." This does not correspond with Defendant's argument that the trial court lacked the authority to hear this matter because the venue was incorrect. "The scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal." State v. Williamson, 333 N.C. 128, 138, 423 S.E.2d 766, 771 (1992) (citing N.C.R. App. P. 10(a); Koufman v. Koufman, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991)). Because Defendant's first assignment of error does not correspond to Defendant's argument on appeal this matter is not properly presented for our review.

II.
In Defendant's second assignment of error, Defendant arguesthe trial court erred in denying his motions to dismiss at the close of the State's evidence and at the close of all the evidence. We hold that Defendant did not properly preserve the issue for appellate review.
The Supreme Court of North Carolina has held that "[t]he essential elements of possession of stolen property are: (1) possession of personal property; (2) which has been stolen; (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose." State v. Perry, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). See also N.C. Gen. Stat. §§ 14-71.1 and 14-72 (2007).
Defendant argues on appeal that the evidence presented at trial was insufficient to prove the third element, that Defendant knew or had reasonable grounds to believe that the jewelry in his possession on 31 January 2007 was stolen. See Perry, 305 N.C. at 233, 287 S.E.2d at 815. However, at the close of the State's evidence, Defendant argued only that there was insufficient evidence as to the value of the jewelry. At the close of all the evidence, Defendant argued (1) that there was insufficient evidence as to the value of the jewelry, and also (2) that there was insufficient evidence to prove the goods were in fact stolen. Defendant argued "[t]here is no evidence, no documentation, that any of the stuff that [Defendant] was in possession of was stolen goods. They were goods. But there's no evidence before this court at this time that they were stolen goods." Rule 10(b)(1) of our Rules of Appellate Procedure provides that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make." N.C.R. App. P. 10(b)(1). "[A] party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal." Dogwood Development and Management Co., LLC v. White Oak Transport Co., 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008). Additionally, as is often stated, "where a theory argued on appeal was not raised before the trial court, `the law does not permit parties to swap horses between courts in order to get a better mount [in the appellate courts].'" State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). Defendant did not preserve the issue of whether the State presented substantial evidence that he knew or had reasonable grounds to believe the jewelry was stolen. See, e.g., State v. Baldwin, 117 N.C. App. 713, 453 S.E.2d 93, cert. denied, 341 N.C. 653, 462 S.E.2d 518 (1995).
No error.
Chief Judge MARTIN and Judge STEPHENS concur.
Report per Rule 30(e).