IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-925

 Filed: 5 May 2015

Pitt County, Nos. 13 CRS 2383-85, 13 CRS 54359, 13 CRS 54365, 13 CRS 54367

STATE OF NORTH CAROLINA,

 v.

LINWOOD EARL DUFFIE, Defendant.

 Appeal by defendant from judgments entered 21 November 2013 by Judge

Robert H. Hobgood in Pitt County Superior Court. Heard in the Court of Appeals 7

January 2015.

 Roy Cooper, Attorney General, by Teresa M. Postell, Assistant Attorney General,
 for the State.

 Paul F. Herzog for defendant-appellant.

 DAVIS, Judge.

 Linwood Earl Duffie (“Defendant”) appeals from judgments entered upon jury

verdicts finding him guilty of three counts of common law robbery, three counts of

conspiracy to commit robbery with a dangerous weapon, and attaining habitual felon

status. On appeal, Defendant contends that the trial court erred in (1) admitting a

videotaped interview of Kumetrius Friason (“Friason”), Defendant’s co-perpetrator;

(2) its instruction to the jury defining the term “firearm”; and (3) sentencing him to

consecutive sentences based on a misapprehension of N.C. Gen. Stat. § 14-7.6. After
 STATE V. DUFFIE

 Opinion of the Court

careful review, we conclude that Defendant received a fair trial free from prejudicial

error but remand for resentencing.

 Factual Background

 The State presented evidence at trial tending to establish the following facts:

On 22 April 2013, Defendant drove Friason, his girlfriend’s 16 year-old son, to

Emerald City Internet Café (“Emerald City”), which featured online sweepstakes

games in which players were eligible to win cash prizes. While Defendant went inside

and played games, Friason waited in Defendant’s car. After some time, Friason went

inside Emerald City with a bandana covering his face and demanded that the cashier,

Zapora Washington (“Washington”), “give [him] the money.” As Friason was

emptying the cash register, Washington noticed that he was holding a gun by his side.

Friason put the money in a bag and exited the café. Defendant then ran out the door

of the café, telling Washington that he was going to go find the person who had robbed

the store. Defendant drove to Hopkins Apartments to pick up Friason who was

waiting there with the money from the robbery. Friason kept “a little bit” of the

money, and Defendant “got the rest.”

 Six days later on 28 April 2013, Defendant drove Friason to a Family Dollar

store in Winterville, North Carolina. Defendant stayed in his car while Friason

entered the store, told the two employees on duty that “this [is] a robbery,” pointed a

gun, and said “give me your money.” Friason took money from the cash register and

 -2-
 STATE V. DUFFIE

 Opinion of the Court

from one of the employees’ wallets. Friason then told the employees to “lay down on

the floor and don’t even look up. Don’t say a word. . . . if you move, I’ll come back and

I’ll shoot both of you.” Friason ran out of the store, and Defendant picked him up in

the parking lot of a nearby gas station. Defendant and Friason “split” the “thousand

or two” dollars from the Family Dollar store robbery.

 On 30 April 2013, Defendant and Friason committed a third robbery at a Trade

Mart convenience store in Greenville, North Carolina. Defendant parked his car

behind a nearby Outback Steakhouse, and Friason exited the vehicle and entered the

Trade Mart. He covered his face with a bandana and approached the two cashiers.

Friason “really didn’t say nothing, [he] just had the gun pointed towards them and

they gave [him] the money.” Friason obtained approximately $1,000.00 from the

Trade Mart and “split it” with Defendant. Defendant then drove Friason back to

Friason’s house.

 On 21 May 2013, law enforcement officers apprehended Defendant and Friason

after receiving information from Martin Lichty (“Lichty”), a witness who observed

Defendant’s vehicle parked near a Dollar General store in Beaufort County. Lichty

noticed that the license plate on Defendant’s vehicle was obscured by a black rag,

which he thought was “suspicious,” and that the driver of the vehicle had “shot across

the street” in the same direction as a person who was “dressed in all black” and

proceeding on foot. Shortly thereafter, Lichty saw the vehicle leaving a car wash. He

 -3-
 STATE V. DUFFIE

 Opinion of the Court

noticed that there were now two occupants in the vehicle and the rag that had

previously covered the license plate had been removed. Lichty dialed 911 and gave

the dispatcher the tag number and a description of the vehicle. A resulting

investigation led law enforcement officers to Defendant, who was arrested at the

Carriage House Apartments complex later that day.

 On 14 October 2013, a Pitt County grand jury returned bills of indictment

charging Defendant with three counts of robbery with a dangerous weapon, three

counts of conspiracy to commit robbery with a dangerous weapon, and having

attained the status of an habitual felon. The indictments also alleged two statutory

aggravating factors: (1) that Defendant “induced Kumetrius Friason to participate

in the commission of the offense or occupied a position of leadership or dominance of

Kumetrius Friason”; and (2) that Defendant “took advantage of a position of trust or

confidence, including a domestic relationship, to commit the offense.”

 A jury trial was held before the Honorable Robert H. Hobgood beginning on 18

November 2013. At the close of the State’s evidence, the trial court reduced the three

counts of robbery with a dangerous weapon to common law robbery but denied

Defendant’s motion to dismiss or reduce the counts of conspiracy to commit robbery

with a dangerous weapon. The jury found Defendant guilty of all charges, including

attaining the status of an habitual felon, and also found that for each offense the

State had proven the existence of an aggravating factor — that Defendant had

 -4-
 STATE V. DUFFIE

 Opinion of the Court

induced Friason to participate in the commission of the offense or occupied a position

of leadership or dominance over Friason — beyond a reasonable doubt. The trial

court entered judgment on the jury’s verdicts and sentenced Defendant as an habitual

felon to three consecutive sentences of 150 to 192 months imprisonment for each of

the common law robbery offenses. The trial court consolidated the three conspiracy

to commit robbery with a dangerous weapon offenses and imposed a concurrent

sentence of 50 to 72 months. Defendant gave oral notice of appeal in open court.

 Analysis

 Defendant’s brief addresses the following three issues: (1) the admission of a

videotaped interview of Friason by law enforcement officers; (2) the trial court’s

instruction to the jury defining the term “firearm”; and (3) the trial court’s

interpretation of N.C. Gen. Stat. § 14-7.6 as mandating the imposition of consecutive

terms of imprisonment when sentencing an habitual felon.1 We address each of these

arguments in turn.

I. Admission of Videotaped Interview

 Defendant first argues on appeal that the admission of a videotaped interview

between law enforcement officers and Friason constituted plain error because some

1 In the “Questions Presented” section of his appellate brief, Defendant raised the additional issue of
whether the trial court erred by denying his motion to dismiss the three counts of conspiracy to commit
robbery with a dangerous weapon. However, Defendant failed to include any substantive argument
addressing this issue in the remainder of his brief. Accordingly, this issue is deemed abandoned on
appeal. See N.C.R. App. P. 28(b)(6) (explaining that any issue “not presented in a party’s brief, or in
support of which no reason or argument is stated, will be taken as abandoned”).

 -5-
 STATE V. DUFFIE

 Opinion of the Court

portions of the video that were “highly inflammatory” to Defendant were not “muted”

or referenced with specificity in the trial court’s curative instruction to the jury.

Defendant asserts that the officers questioning Friason repeatedly attacked

Defendant’s character during the interview by referring to him in derogatory terms,

calling him — among other things — a “coward” and “a piece of crap” who was “trying

to set [Friason] up to take the fall.”

 Defendant concedes that his trial counsel only objected once during the

presentation of the video to the jury — an objection which was sustained by the trial

court and followed by a curative instruction in which the court instructed the jury to

disregard the words “career criminal” and “habitual” that had been used to describe

Defendant. As such, Defendant requests that we review the admission of the

remainder of the videotaped interview for plain error. The plain error doctrine “is to

be applied cautiously and only in the exceptional case” and requires a defendant to

demonstrate that the asserted error “had a probable impact on the jury’s finding that

the defendant was guilty.” State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334

(2012) (citations and quotation marks omitted).

 A. Rule 403 Argument

 Defendant’s primary argument concerning the admission of the video is that

its probative value was substantially outweighed by the danger of unfair prejudice to

him such that the trial court should have excluded the video under Rule 403 of the

 -6-
 STATE V. DUFFIE

 Opinion of the Court

North Carolina Rules of Evidence. Pursuant to Rule 403, a trial court may exclude

relevant evidence if it determines that the probative value of such evidence “is

substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence.” N.C.R. Evid. 403.

 However, it is well established that plain error review is inapplicable to issues

that “fall within the realm of the trial court’s discretion,” which include a trial court’s

determination as to the admissibility of evidence based on the Rule 403 balancing

test. State v. Cunningham, 188 N.C. App. 832, 837, 656 S.E.2d 697, 700 (2008)

(citation and quotation marks omitted). For this reason, Defendant’s Rule 403

argument concerning the admission of the video is overruled. See id. (refusing to

review under plain error standard defendant’s argument relating to trial court’s

application of Rule 403).

 B. Admission for Corroborative Purposes

 Defendant also contends that the statements contained in the video did not

corroborate Friason’s trial testimony and, therefore, constituted inadmissible

hearsay that “injected fundamental unfairness into [Defendant’s] trial.” Because,

unlike his argument based on Rule 403, this contention does not involve a purely

discretionary ruling by the trial court, plain error review is appropriate.

 -7-
 STATE V. DUFFIE

 Opinion of the Court

 The prior consistent statements of a witness may be offered at trial for

corroborative, nonhearsay purposes. State v. Tellez, 200 N.C. App. 517, 526, 684

S.E.2d 733, 740-41 (2009). “Corroborative testimony is testimony which tends to

strengthen, confirm, or make more certain the testimony of another witness.” State

v. Lloyd, 354 N.C. 76, 103, 552 S.E.2d 596, 617 (2001) (citation and quotation marks

omitted). “In order to be corroborative and therefore properly admissible, the prior

statement of the witness need not merely relate to specific facts brought out in the

witness’s testimony at trial, so long as the prior statement in fact tends to add weight

or credibility to such testimony.” Id. (citation omitted). The trial court “has wide

latitude in deciding when a prior consistent statement can be admitted for

corroborative, nonhearsay purposes.” State v. Bell, 159 N.C. App. 151, 155, 584

S.E.2d 298, 301 (2003) (citation and quotation marks omitted), cert. denied, 358 N.C.

733, 601 S.E.2d 863 (2004).

 Defendant claims that while Friason’s statements in the videotaped interview

suggested that Defendant had influence over him and induced him to commit the

robberies, these implications were absent from his trial testimony. Consequently, he

asserts, the prior statements were “contradictory” to Friason’s testimony at trial and

were “not admissible under the guise that [the statements] tended to add weight or

credibility to his trial testimony.”

 -8-
 STATE V. DUFFIE

 Opinion of the Court

 Our Supreme Court has explained that “prior consistent statements are

admissible even though they contain new or additional information so long as the

narration of events is substantially similar to the witness’ in-court testimony.” State

v. Williamson, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992). As such, when a prior

statement substantially strengthens or confirms in-court testimony, “it is not

rendered incompetent by the fact that there is some variation. Such variations affect

only the weight of the evidence which is for the jury to determine.” Lloyd, 354 N.C.

at 104, 552 S.E.2d at 617 (citations and quotation marks omitted).

 Here, Friason’s statements during the interview established a timeline of the

robberies, an account of how they were committed, and Friason’s and Defendant’s

respective roles in the commission of the crimes — topics that were all covered in his

testimony at trial. While the statements Friason made in his interview did, in fact,

contain the additional suggestion that he likely would not have committed the

robberies absent Defendant’s involvement, the statements made during the interview

did not contradict his trial testimony and, indeed, his accounts of the robberies in

both contexts were substantially similar. Both during his interview and at trial,

Friason consistently acknowledged that going to the various stores was his idea, that

Defendant transported them to each location, and that he and Defendant split the

proceeds of the robberies. Accordingly, we cannot conclude that the trial court

 -9-
 STATE V. DUFFIE

 Opinion of the Court

committed error — much less plain error — in admitting the videotape for

corroborative purposes.2

II. Jury Instruction Defining “Firearm”

 Defendant next argues that the trial court erred in defining the term “firearm”

in its jury instructions. Both at trial and in his videotaped interview, Friason referred

to the weapon he carried during the robberies as a “BB gun” or a “fake gun.” In

response to a question from the jury as to “how the law defines firearm in regards to

the conspiracy charge,” the trial court instructed the jury that a firearm “is a weapon

that when fired, that the projectile fired therefrom can cause death or serious bodily

injury to a human being if the projectile strikes and enters a vital part of the human

body.”

 Defendant acknowledges that his trial counsel failed to object to this

instruction and that as a result, he is entitled only to plain error review on appeal as

to this issue. As noted above, under the plain error standard, Defendant bears the

burden of demonstrating to this Court that the instructional error “had a probable

 2Defendant also argues that Friason’s statements in the interview were the only evidence of
the aggravating factor that Defendant “took advantage of a position of trust or confidence, including a
domestic relationship, to commit the offense” and therefore contradicted his trial testimony. Contrary
to the contentions made in Defendant’s brief, however, this aggravating factor was not even submitted
to the jury for determination. Rather, the only aggravating factor actually submitted to the jury was
whether Defendant “induced Kumetrius Friason to participate in the commission of the offense or
occupied a position of leadership or dominance of Kumetrius Friason.” As such, Defendant cannot
show that the admission of such evidence prejudiced him. See State v. Simpson, ___ N.C. App. ___,
___, 748 S.E.2d 756, 760 (2013) (explaining that defendant must establish prejudice in order to show
plain error).

 - 10 -
 STATE V. DUFFIE

 Opinion of the Court

impact on the jury’s finding that the defendant was guilty.” Lawrence, 365 N.C. at

517, 723 S.E.2d at 333 (citation and quotation marks omitted).

 Defendant contends that the trial court plainly erred in giving this instruction

because (1) “Friason testified, without contradiction, that he used a BB gun in all of

the cases for which [Defendant] was on trial”; and (2) the General Assembly has

recognized a distinction between firearms and BB guns. However, we need not

determine the propriety of the trial court’s definitional instruction because even

assuming, without deciding, that the instruction was erroneous, Defendant has failed

to show sufficient prejudice to warrant a finding of plain error.

 Here, Defendant was convicted on the charge of conspiracy to commit robbery

with a dangerous weapon — not the charge of robbery with a dangerous weapon itself.

“[C]riminal conspiracy is an agreement between two or more persons to do an

unlawful act . . . . [and] no overt act is necessary to complete the crime of conspiracy.

As soon as the union of wills for the unlawful purpose is perfected, the offense of

conspiracy is completed.” State v. Bindyke, 288 N.C. 608, 615-16, 220 S.E.2d 521, 526

(1975). Notably, Defendant does not argue on appeal that the instruction was

erroneous on the theory that the evidence only supported a finding of the lesser-

included offense of conspiracy to commit common law robbery. Indeed, as noted

above, Defendant has abandoned on appeal his contention that the trial court erred

in denying his motion to dismiss the charges of conspiracy to commit robbery with a

 - 11 -
 STATE V. DUFFIE

 Opinion of the Court

dangerous weapon. Rather, he appears to be contending that the instruction was

misleading solely because of Friason’s testimony that he used a BB gun or a “fake

gun” to actually commit the robberies.

 However, proof that a dangerous weapon was actually used to commit the

robberies was not required to establish that Defendant and Friason conspired to

commit the robberies with a dangerous weapon. See id. at 616, 220 S.E.2d at 526

(“The conspiracy is the crime and not its execution.”). While a determination of

whether the instrument used was, in fact, a firearm capable of endangering life would

have been necessary to the resolution of the issue of whether Defendant was guilty of

robbery with a dangerous weapon, that issue was never placed before the jury because

the trial court reduced the robbery with a dangerous weapon charges to common law

robbery at the conclusion of the State’s case.3

 Accordingly, Defendant has not established prejudice from the trial court’s

instruction. See Lawrence, 365 N.C. at 519, 723 S.E.2d at 335 (concluding that

defendant could not “show the prejudicial effect necessary” to establish plain error

 3 While not the basis for our ruling on this issue, we note that the evidence presented at trial
did not conclusively establish that the weapon used in the commission of the robberies was, in fact, a
BB gun. The weapon was never recovered, and witnesses testified both that the weapon appeared to
be real and that the robber had threatened to shoot them if they did not comply with his demands.
See State v. Joyner, 312 N.C. 779, 787, 324 S.E.2d 841, 846 (1985) (upholding trial court’s denial of
motion to dismiss robbery with a dangerous weapon charge despite fact that defendant presented
evidence indicating that weapon used was inoperative because “the statement of the robber to the
victim during the course of the robbery that he would kill the victim” constituted evidence that weapon
was capable of endangering or threatening life of victim).

 - 12 -
 STATE V. DUFFIE

 Opinion of the Court

where trial court’s jury instruction regarding conspiracy to commit robbery with a

dangerous weapon was erroneous).

III. Sentencing

 Defendant’s final argument on appeal is that this matter must be remanded

for resentencing because the trial court imposed consecutive sentences based on a

misapprehension of N.C. Gen. Stat. § 14-7.6. We agree.

 N.C. Gen. Stat. § 14-7.6 provides that

 [w]hen an habitual felon as defined in this Article commits
 any felony under the laws of the State of North Carolina,
 the felon must, upon conviction or plea of guilty under
 indictment as provided in this Article (except where the
 felon has been sentenced as a Class A, B1, or B2 felon) be
 sentenced at a felony class level that is four classes higher
 than the principal felony for which the person was
 convicted; but under no circumstances shall an habitual
 felon be sentenced at a level higher than a Class C felony.
 In determining the prior record level, convictions used to
 establish a person’s status as an habitual felon shall not be
 used. Sentences imposed under this Article shall run
 consecutively with and shall commence at the expiration of
 any sentence being served by the person sentenced under
 this section.

N.C. Gen. Stat. § 14-7.6 (2013) (emphasis added).

 During the sentencing hearing, the trial court sentenced Defendant as an

habitual felon to three consecutive terms of imprisonment for his three common law

robbery convictions, stating that “the law requires consecutive sentences on habitual

felon judgments.” However, based on the language of N.C. Gen. Stat. § 14-7.6, a trial

 - 13 -
 STATE V. DUFFIE

 Opinion of the Court

court is only required to impose a sentence consecutively to “any sentence being

served by” the defendant. Id. Thus, if the defendant is not currently serving a term

of imprisonment, the trial court may exercise its discretion in determining whether

to impose concurrent or consecutive sentences. See N.C. Gen. Stat. § 15A-1354(a)

(2013) (explaining that generally “sentences may run either concurrently or

consecutively, as determined by the court”).

 In State v. Nunez, 204 N.C. App. 164, 169, 693 S.E.2d 223, 227 (2010), we

analyzed the meaning of nearly identical language contained in N.C. Gen. Stat. § 90-

95, which describes the penalties for various drug offenses and states that

“[s]entences imposed pursuant to this subsection shall run consecutively with and

shall commence at the expiration of any sentence being served by the person

sentenced hereunder.” This Court determined that the above-quoted language

 means that if the defendant is already serving a sentence,
 the new sentence under N.C. Gen. Stat. § 90-95(h) must
 run consecutively to that sentence. It does not mean that
 when a defendant is convicted of multiple trafficking
 offenses at a term of court that those sentences, as a matter
 of law, must run consecutively to each other. When this
 occurs, the trial court has the discretion to run the
 sentences either consecutively or concurrently.

Id.

 We conclude that the same is true of the corresponding language in N.C. Gen.

Stat. § 14-7.6. As such, because Defendant was not already serving a sentence at the

time of the sentencing hearing, the trial court was incorrect in its belief that

 - 14 -
 STATE V. DUFFIE

 Opinion of the Court

consecutive sentences were mandatory in this case. We must therefore remand for

resentencing so the trial court may properly exercise its discretion in determining

whether Defendant’s sentences should run consecutively or concurrently. See id. at

170, 693 S.E.2d at 227 (remanding for resentencing where “trial court erroneously

believed that it was mandated by law to impose consecutive sentences” and

explaining that “[w]hen a trial judge acts under a misapprehension of law, this

constitutes an abuse of discretion”).

 Conclusion

 For the reasons stated above, we conclude that Defendant received a fair trial,

free from prejudicial error. We remand, however, for a new sentencing hearing so the

trial court may (1) exercise its discretion as to whether Defendant should receive

consecutive or concurrent terms for his offenses; and (2) sentence Defendant

accordingly.

 NO PREJUDICIAL ERROR AT TRIAL; REMANDED FOR RESENTENCING.

 Judges ELMORE and TYSON concur.

 - 15 -