ZACHARY, Judge.
 

 *159
 
 Defendant appeals from judgments entered upon the following convictions: (1) two counts of first-degree rape, one count of first-degree
 
 *179
 
 sex offense, and one count of second-degree kidnapping committed against "Alice"; (2) two counts of first-degree rape and one count of first-degree kidnapping committed against "Patricia"; and (3) two counts of first-degree sex offense, one count of first-degree kidnapping, one count of first-degree rape, and one count of conspiracy to commit first-degree kidnapping and first-degree rape, committed against "Louise".
 
 [1]
 
 The offenses were committed by two men in 1991. Defendant was charged in 2012, after forensic testing revealed a match between defendant's DNA profile and DNA evidence collected at the time of the offenses. On appeal, defendant argues that the trial court erred by admitting the statements given by Patricia and Alice to a law enforcement officer and by denying his request for funds with which to retain an expert in order to retest the DNA samples. Defendant also asserts that the trial court committed plain error in its instructions to the jury. We conclude that the trial court did not err by admitting the witnesses' statements or by denying defendant's motion seeking funds with which to retain an expert to retest the DNA evidence, and did not commit error or plain error in its instructions to the jury.
 

 I. Factual and Procedural Background
 

 In 1991, Alice, Patricia, and Louise were kidnapped and subjected to sexual assault in separate incidents. On 17 December 2012, defendant was indicted for the following offenses:
 

 1. Three counts of first-degree rape, two counts of first-degree sex offense, and one count of first-degree kidnapping, committed against Patricia.
 

 2. Three counts of first-degree rape, one count of first-degree sex offense, and one count of second-degree kidnapping, committed against Alice.
 

 3. One count of first-degree rape, three counts of first-degree sex offense, one count of first-degree kidnapping,
 
 *160
 
 and one count of conspiracy to commit first-degree kidnapping and first-degree rape, committed against Louise.
 

 Defendant was tried before a jury beginning on 26 August 2015. Prior to trial, three different attorneys were appointed to represent defendant. The first two were removed at defendant's request. When defendant expressed dissatisfaction with his third appointed counsel, the trial court ruled that defendant had forfeited his right to be represented by appointed counsel. Defendant represented himself at trial, with his third appointed attorney serving as standby counsel. Defendant does not raise any appellate issue regarding his
 
 pro se
 
 representation.
 

 At the outset of trial, the State sought to join for trial the charges pertaining to Alice, Patricia, and Louise. Although defendant opposed joinder of the charges, he has not challenged the joinder on appeal. The trial took place twenty-four years after the offenses were committed, during which time Alice and Patricia had died of natural causes. Louise testified at trial about the offenses committed against her. The evidence establishing the commission of criminal offenses against Alice and Patricia came from statements they made to medical personnel at the time of the assaults. The trial court also admitted as corroborative evidence the statements made by Alice and Patricia to Charlotte Police Major LaFreda Lester.
 

 The trial evidence established factual similarities among the cases. All of the charged offenses occurred in Charlotte between May and August, 1991. In each case, an African-American woman in her twenties was walking in Charlotte late at night, and was kidnapped by two African-American men driving a car. In each instance, after the victim was in the car she was blindfolded, attacked, and threatened. The two men drove each of the women to a house in an unknown location, where both men sexually assaulted the victim. All three women were subjected to both forced vaginal intercourse and forced oral sex. Following the assaults, the men allowed the victims to get dressed, drove them to a different location, and let them out of the car. In each case, the victim did not recognize either of the attackers, and no suspects were arrested in 1991. Forensic examination later revealed a statistically significant
 
 *180
 
 match between defendant's DNA profile and DNA evidence collected from each victim in 1991. Finally, in each case, the victim gave statements to medical personnel describing the kidnapping and sexual assaults. Additional factual details about the offenses are discussed below, as relevant to the issues raised on appeal.
 
 *161
 
 Prior to submitting the charges to the jury, the prosecutor dismissed one charge of first-degree rape committed against Alice, and the trial court dismissed one charge of first-degree rape and one charge of first-degree sex offense committed against Patricia, as well as one charge of first-degree sex offense committed against Louise. On 11 September 2015, the jury found defendant guilty of: (1) one count of first-degree kidnapping and two counts of first-degree rape of Patricia; (2) one count of first-degree sex offense, one count of second-degree kidnapping, and two counts of first-degree rape of Alice; and (3) one count of conspiracy to commit first-degree kidnapping and first-degree rape, two counts of first-degree sex offense, one count of first-degree kidnapping, and one count of first-degree rape of Louise. The jury found defendant not guilty of one count of first-degree sex offense of Patricia.
 

 Because the offenses were committed in 1991, defendant was sentenced under the Fair Sentencing Act. The trial court imposed three consecutive sentences of life imprisonment: a consolidated sentence in cases Nos. 12 CRS 55384-85 and 12 CRS 55391; a second consolidated sentence of life imprisonment in cases Nos. 12 CRS 55383, 12 CRS 253233, 12 CRS 25324, 12 CRS 253235, and 12 CRS 253237; and a third consolidated life sentence in cases Nos. 12 CRS 55387-89, and 12 CRS 55394. The court also ordered defendant to register as a sex offender for the remainder of his life and to enroll in satellite-based monitoring if he were released from prison. Defendant gave notice of appeal in open court.
 

 II. Admission of Statements by Deceased Witnesses to Major Lester
 

 Defendant argues first that the trial court erred by admitting the statements made by Alice and Patricia to Major Lester to corroborate the women's statements to medical personnel. Defendant contends that the statements were "not corroborative as they were used by the State and the court for the truth of the matter asserted in the statements" and that the admission of these statements "violated [defendant's] constitutional guarantee to confrontation" under the North Carolina and United States Constitutions. Defendant does not challenge the admission of Louise's statement to Major Lester, as Louise was available for cross-examination at trial. Therefore, this issue pertains only to defendant's convictions for offenses committed against Alice and Patricia. We conclude that the trial court did not err by admitting the witnesses' statements as corroboration of their statements to medical personnel.
 

 *162
 

 A. Preservation of Constitutional Issue
 

 We first address the State's argument that defendant failed to preserve for appellate review his argument that admission of these statements violated his rights under the Sixth Amendment to the United States Constitution. When Major Lester was asked to read Patricia's statement, defendant objected to the introduction of Patricia's statement and asked to be heard outside the presence of the jury. The trial court overruled defendant's objection and denied his request to be heard. After Major Lester read the statement, defendant addressed the trial court outside of the jury's presence and moved for a mistrial on the grounds that he was unable to cross-examine Patricia. Defendant read aloud from the discussion in
 
 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 ,
 
 124 S.Ct. 1354
 
 ,
 
 158 L.Ed.2d 177
 
 (2004), concerning the constitutional right to cross-examine the declarant of a statement introduced for substantive purposes. The trial court ruled that Patricia's statement to Major Lester was admissible to corroborate her statements to medical personnel and denied defendant's motions for a mistrial and to exclude the statement. Defendant also objected to the introduction of Alice's statement to Major Lester. We conclude that defendant properly preserved this issue for our review.
 

 B. Standard of Review
 

 "When a defendant objects to the admission of evidence, we consider, whether
 
 *181
 
 the evidence was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence."
 
 State v. Blackwell
 
 ,
 
 207 N.C.App. 255
 
 , 257,
 
 699 S.E.2d 474
 
 , 475 (2010). "The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 ."
 
 State v. Graham
 
 ,
 
 200 N.C.App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 857
 
 ,
 
 694 S.E.2d 766
 
 (2010).
 

 C. Discussion
 

 Defendant argues that the trial court erred by admitting the statements of Alice and Patricia to Major Lester, on the grounds that the statements were not admitted as corroborative evidence. Defendant contends that the admission of these statements violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution. We disagree.
 

 Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2015). "As a general rule, hearsay is inadmissible at trial."
 
 State v. Morgan
 
 ,
 
 359 N.C. 131
 
 , 154,
 
 604 S.E.2d 886
 
 , 900 (2004). In
 
 *163
 

 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 ,
 
 124 S.Ct. 1354
 
 ,
 
 158 L.Ed.2d 177
 
 (2004), the United States Supreme Court held that the admission of an out-of-court testimonial statement made by an unavailable declarant who did not testify at trial and who was not previously available for cross-examination by the defendant is barred by the Confrontation Clause of the Sixth Amendment. However:
 

 "[If] evidence is admitted for a purpose other than the truth of the matter asserted," such as when evidence is admitted solely for purposes of corroboration, then "the protection afforded by the Confrontation Clause against testimonial statements is not at issue." ... According to our Supreme Court, North Carolina case law establishes "the rule that prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony."
 

 State v. Ross
 
 ,
 
 216 N.C.App. 337
 
 , 346-47,
 
 720 S.E.2d 403
 
 , 409 (2011) (quoting
 
 State v. Walker
 
 ,
 
 170 N.C.App. 632
 
 , 635,
 
 613 S.E.2d 330
 
 , 333 (2005), and
 
 State v. Williamson
 
 ,
 
 333 N.C. 128
 
 , 136,
 
 423 S.E.2d 766
 
 , 770 (1992) ),
 
 disc. rev. denied
 
 ,
 
 366 N.C. 400
 
 ,
 
 735 S.E.2d 174
 
 (2012). "Prior statements admitted for corroborative purposes are not to be received as substantive evidence."
 
 State v. Harrison
 
 ,
 
 328 N.C. 678
 
 , 681,
 
 403 S.E.2d 301
 
 , 303-04 (1991) (citation omitted). "[A]dmission of nonhearsay raises no Confrontation Clause concerns."
 
 State v. Gainey
 
 ,
 
 355 N.C. 73
 
 , 87,
 
 558 S.E.2d 463
 
 , 473 (2002).
 

 The trial court admitted statements by Alice and Patricia to the health care personnel who treated them at the time of the assaults, under the exception to the hearsay rule contained in Rule 803(4), for statements given for purposes of medical diagnosis or treatment. Defendant does not challenge the admission of these statements, and the witnesses' statements to Major Lester were admitted to corroborate their statements to medical personnel. We conclude that the challenged statements meet the requirements for admission as corroborative evidence.
 

 Patricia was treated by Nurse Janet Gillespie, who testified at trial. Nurse Gillespie testified that Patricia told her that at around 2:30 a.m. on 7 May 1991, she was walking near a location in Charlotte known as The Plaza, when she accepted a ride with two African-American men whom Patricia did not know. When Patricia got into the front seat of the car, the man in the back seat put a towel over her head and an iron bar against her neck. The men drove to a house where they led Patricia inside with the towel over her head. The men forced her to engage in
 
 *164
 
 vaginal intercourse and fellatio. Patricia was also treated by Dr. David Maxwell Gray, who testified as an expert in emergency medicine. Dr. Gray's testimony included the following summary of Patricia's statements to him:
 

 Dr. Gray: She says she was walking home and accepted a ride in a car that had two men in it. One moved to the backseat when she got in the front seat, and she was attacked from behind with a crowbar across her neck. That part I remember.
 

 *182
 
 And she had a towel put over her head and was driven-actually, I'll read it word for word, I'm sorry.
 

 ...
 

 Dr. Gray: Was attacked from behind with a crowbar in front of neck. Attackers put a towel over patient's head and took patient to house. ... One placed a penis in her mouth and then had vaginal intercourse, and the second attacker repeated the same things as the first attacker but with the addition of attempting anal intercourse.
 

 Major Lester testified that on 7 May 1991, she took a statement from Patricia, who told Major Lester that she had accepted a ride with two unknown African-American men. After Patricia got into the car, the men put a towel over her head and choked her with an iron bar. The men took Patricia to a house where they forced her to engage in vaginal intercourse and fellatio. Patricia's statement to Major Lester included additional details about the incident, but was substantially similar to her statements to medical personnel.
 

 Alice was treated by Nurse Gillespie and Dr. Russell Howard Greenfield. On 19 July 1991, Alice told Nurse Gillespie that she had been sexually assaulted by two unknown African-American men a few hours earlier. The men had threatened her with a knife, choked and blindfolded her, and subjected her to forcible vaginal intercourse, anal intercourse, and fellatio. Dr. Greenfield testified as an expert in emergency medicine. Alice told Dr. Greenfield that she and her sister had voluntarily gotten into a car with two men. When Alice's sister got out of the car at a convenience store, the passenger in the car covered Alice's head, choked her, and threatened to stab her. The men took Alice to a house and raped her. Dr. Greenfield testified that the results of his pelvic examination of Alice were consistent with her having been sexually assaulted by two men.
 

 Major Lester took a statement from Alice on 16 July 1991. Alice told Major Lester that earlier that night she and her sister got into a car with
 
 *165
 
 two unknown African-American men. After a short drive, Alice's sister got out of the car. A man in the car then covered Alice's head, choked her, hit her with his fist, and threatened to stab her. They drove her to a house where both men forced her to engage in vaginal intercourse. One man also attempted to have anal intercourse and placed his penis in her mouth. We conclude that Alice's statement to Major Lester was substantially similar to her statements to health care personnel.
 

 Based upon our review of the transcript of this case, we conclude that the statements by Patricia and Alice to Major Lester were properly admitted to corroborate their statements to the medical personnel who treated them shortly after each witness was sexually assaulted. In reaching this conclusion, we have carefully considered defendant's arguments for a contrary result.
 

 On appeal, defendant does not argue that the statements of Patricia and Alice to Major Lester were inadmissible as corroborative evidence because the statements contradicted, rather than corroborated, the witnesses' statements to medical personnel. Defendant contends, however, that the trial court "must not consider the corroborative nature of the statement when determining whether it qualifies as an exception to hearsay." Defendant cites
 
 State v. Champion
 
 ,
 
 171 N.C.App. 716
 
 , 722,
 
 615 S.E.2d 366
 
 , 371 (2005), in support of this position. In
 
 Champion
 
 , however, the issue was whether a statement qualified under the residual hearsay exception in N.C. Gen. Stat. § 8C-1, Rule 804(b)(5).
 
 Champion
 
 does not hold that the trial court should not consider the corroborative nature of a statement in determining whether it falls within the exception for
 
 corroborative
 
 statements.
 

 Defendant's primary argument is that the statements contained additional information not included in the witnesses' statements to health care workers and that the statements were admitted as substantive evidence for the truth of these additional details, rather than as corroborative evidence. However, the mere fact that a corroborative statement contains additional facts not included in the statement that is being corroborated does not render the corroborative statement inadmissible:
 

 "In order to be admissible as corroborative evidence, a witness' prior consistent statements merely must tend to add weight or
 
 *183
 
 credibility to the witness' testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates." Moreover, "if the previous statements
 
 *166
 
 are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations ... affect [only] the credibility of the statement."
 

 State v. Walters
 
 ,
 
 357 N.C. 68
 
 , 88-89,
 
 588 S.E.2d 344
 
 , 356-57 (2003) (quoting
 
 State v. Farmer
 
 ,
 
 333 N.C. 172
 
 , 192,
 
 424 S.E.2d 120
 
 , 131 (1993), and
 
 State v. Martin
 
 ,
 
 309 N.C. 465
 
 , 476,
 
 308 S.E.2d 277
 
 , 284 (1983) ).
 

 Defendant contends that the statements to Nurse Gillespie and the treating physicians were "bare-bones," but that Patricia's statement to Major Lester "provided the State with evidence, not available from the medical records, which was necessary to convict [defendant] of many counts." Defendant does not identify any specific charge for which the evidence was insufficient without information in the statements to Major Lester, and our review of the evidence establishes that the statements of Patricia and Alice to health care personnel, in combination with the DNA evidence discussed below, provided sufficient evidentiary support for all of the charges that were submitted to the jury.
 

 When Patricia spoke with the health care professionals who treated her shortly after she was assaulted, she described being kidnapped and subjected to forcible sexual intercourse and forcible oral sex with two men. The charges pertaining to Patricia that were submitted to the jury were two charges of first-degree rape, one charge of first-degree sex offense, and one charge of first-degree kidnapping. These charges were adequately supported by Patricia's statements to medical personnel. The charges submitted to the jury in which Alice was the alleged victim were two charges of first-degree rape, one charge of first-degree sex offense, and one charge of second-degree kidnapping. These charges were supported by the statements that Alice gave to medical personnel. Defendant does not specify which convictions required evidence contained only in the witnesses' statements to Major Lester and does not argue that the State's evidence was insufficient as to any element of any charged offense in the absence of Patricia's or Alice's statement to Major Lester. We conclude that this argument lacks merit.
 

 Defendant also argues that the "State's dependence on the statements for substantive evidence is shown in the State's ... closing argument." Defendant cites no authority, and we know of none, holding that the State's reference in a closing argument to arguably inadmissible evidence establishes that the State had offered insufficient evidence to convict a defendant without the challenged evidence.
 

 *167
 
 Defendant additionally asserts that the trial court "used the police statements in charging the jury," citing a quote from the transcript in which defendant contends that the trial court was discussing information that "was only available in [Patricia's] statement to the police." However, the quote identified by defendant came not from the trial court's charge to the jury, but from a discussion between the trial court, the prosecutor, and defendant concerning which charges could properly be submitted to the jury. In fact, the prosecutor and the trial court dismissed those charges that were not adequately supported by the witnesses' statements in the hospital. Defendant also argues that the introduction of the witnesses' statements for substantive purposes is demonstrated by the fact that in the prosecutor's argument for the joinder of offenses for trial, he referred to information from these statements:
 

 The court also depended on the testimonial statements to grant the State's motion for joinder and for admission of 404(b) evidence, by finding the State had established sufficient facts relating to mode of operation, similar scheme and location, based on the State's list of similarities which was derived from the testimonial statements.
 

 N.C. Gen. Stat. § 15A-926(a) (2015) provides in relevant part that two or more offenses may be joined for trial when the offenses are based "on a series of acts or transactions connected together or constituting parts of a single scheme or plan." In this
 
 *184
 
 case, the State's motion for joinder included the following circumstances that were not, as contended by defendant, "derived from the testimonial statements."
 

 1. Location-All offenses were committed in Charlotte.
 

 2. Date and Time-All offenses occurred late at night between May and August, 1991.
 

 3. Victims-All of the victims were African-American females in their 20s who had been drinking.
 

 4. Modus Operendi-In each case:
 

 a. The victim was walking before getting into a car with the assailants.
 

 b. The victim was physically assaulted in the car, and something was put on her head.
 

 c. Similar sexual assaults were perpetrated against each victim.
 

 *168
 
 d. All of the victims were taken by car to an unknown location where the sexual assaults occurred.
 

 5. DNA-In each case, defendant's DNA matched the DNA taken from evidence collected at the time of the assaults.
 

 The circumstances noted above were sufficient to support the trial court's decision to allow joinder of the offenses, notwithstanding the fact that the State's motion for joinder also included the following circumstances included in the victims' statements to Major Lester, but not in their statements to medical personnel: (1) all of the victims were released at a location different from where they were abducted, and (2) the victims' descriptions to Major Lester of the car and the assailants' appearance were similar.
 

 The record does not contain a formal written order allowing joinder, and "[t]he rule is that a trial judge sitting without a jury is presumed to have considered only the competent, admissible evidence and to have disregarded any inadmissible evidence that may have been admitted."
 
 Woncik v. Woncik
 
 ,
 
 82 N.C.App. 244
 
 , 249,
 
 346 S.E.2d 277
 
 , 280 (1986) (citing
 
 City of Statesville v. Bowles
 
 ,
 
 278 N.C. 497
 
 ,
 
 180 S.E.2d 111
 
 (1971) ). We conclude that the trial court's ruling allowing joinder was supported by the circumstances established from sources other than Patricia's and Alice's statements to Major Lester, and that the record contains no basis on which to assume that the trial court relied upon other factors.
 

 Defendant further contends that the admission of the testimony of Ms. Eva Fernandez pursuant to North Carolina Rule of Evidence 404(b) was dependent upon details found only in Patricia's and Alice's statements to Major Lester. Defendant argues that in the State's argument to the trial court for admission of this evidence, the State referred to the specific location in Charlotte where Ms. Fernandez was picked up, and linked it to the location where Patricia had been dropped off, and that this information was only found in Patricia's statement to Major Lester. However, there were significant similarities between the charged offenses and Ms. Fernandez's experience. In 1991, Ms. Fernandez, like the other victims, was walking in Charlotte at night, was intoxicated, and accepted a ride from two unknown African-American men. Once she was in the car, the men hit her on the head with "something silver" and put a cloth over her head. Fortunately, Ms. Fernandez was able to escape from the car. We conclude that these similarities, not derived from Patricia's statement to Major Lester, were sufficient to support the trial court's admission of the evidence. The record does not contain a written or oral order indicating that the trial court relied upon
 
 *169
 
 inadmissible evidence, and we presume that the trial court based its ruling on admissible evidence. Therefore, even if the prosecutor improperly referred to the location where Patricia was released in his argument for admission of Ms. Fernandez's testimony, there is no basis upon which to conclude that the trial court based its ruling in part upon this information. We also note that defendant did not object in the presence of the jury to Ms. Fernandez's testimony, and does not argue on appeal that it was inadmissible.
 

 Defendant also argues that the statements given by Patricia and Alice to Major Lester provided the only evidence to support certain "indicted" charges. However, at the close of all the evidence the trial court, the prosecutor,
 
 *185
 
 and defendant reviewed the evidence and dismissed charges that were not supported by Patricia's and Alice's statements to health care personnel. Defendant specifically limits his argument to "indicted" offenses and does not challenge the evidentiary support for the charges that were actually submitted to the jury.
 

 The only basis for defendant's argument that the statements were inadmissible is that they were admitted for the truth of the matters asserted. We have rejected this argument and conclude that (1) the statements were admissible to corroborate the witnesses' statements to medical personnel, and (2) there was sufficient evidence to support submission of the various charges to the jury based on the witnesses' statements to medical personnel and on the overwhelming statistical likelihood that defendant's DNA matched that found on the victims.
 

 Finally, defendant argues that the details in the statements increased the likelihood of a verdict based on emotion. We have concluded that it was not error to admit the witnesses' statements. Accordingly, we do not reach defendant's argument that the alleged error was a constitutional violation. N.C. Gen. Stat. § 15A-1443(a) provides that a criminal defendant is prejudiced by non-constitutional errors only if "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant." In this case, defendant has failed to establish that there is a reasonable possibility that he would have been acquitted if the statements had been excluded.
 

 For the reasons discussed above, we conclude that the trial court did not err by admitting the statements given by Patricia and Alice to Major Lester to corroborate the witnesses' statements to the medical personnel who treated them at the time of the assaults. Defendant's arguments to the contrary do not have merit.
 

 *170
 

 III. Denial of Defendant's Motion for Retesting of DNA Samples
 

 Defendant argues next that the trial court erred by denying his motion seeking funds with which to hire an expert to retest the DNA samples. We disagree.
 

 In October 2009, Charlotte Mecklenburg Police Department DNA team leader Eve Rossi, who testified at trial as an expert in forensic DNA analysis, conducted DNA testing of evidence obtained in the assault cases of Patricia, Alice, and Louise, and found an unknown DNA profile that was common to all three cases. In March 2011, defendant voluntarily provided a buccal swab from which a DNA profile could be established. In April 2011, Ms. Rossi conducted a DNA analysis of the sample obtained from defendant and found that it matched the DNA profile of the unknown subject identified in the three cases.
 

 When Ms. Rossi was asked to quantify the statistical probability that the DNA obtained from evidence collected in Alice's case had originated from someone other than defendant, she testified that the "probability of selecting an unrelated person at random who could be the source of that major DNA profile within the vaginal swabs is approximately 1 in 60.6 trillion." Ms. Rossi explained that this probability meant that she "would need to look at or do DNA typing on 60.6 trillion individuals to find somebody else who would have a DNA profile that also matched that DNA profile from the vaginal swabs." Regarding the match between defendant's DNA profile and the DNA samples obtained from Patricia, Ms. Rossi testified that the probability of selecting an unrelated person at random who could be the source of the major DNA profile obtained in that case was approximately 1 in 1.62 quadrillion. For Louise's case, Ms. Rossi testified that the statistical probability of selecting an unrelated person at random who could be the source of that DNA profile was approximately 1 in 323 billion. Ms. Rossi also testified that the earth's population was approximately 7.2 billion.
 

 Prior to trial, defendant retained Dr. Maher Noureddine to perform a review of Ms. Rossi's analysis of the DNA samples and prepare a report summarizing the results of his examination. In his report, Dr. Noureddine criticized certain procedures used in the
 
 *186
 
 DNA analysis and took issue with some of Ms. Rossi's characterizations of the degree of similarity between various DNA samples. However, Dr. Noureddine did not dispute the ultimate results of the DNA analysis. After Dr. Noureddine submitted his report, defendant filed a
 
 pro se
 
 motion for funding with which to hire another expert to retest the DNA samples. The trial court denied defendant's motion in an order finding in relevant part that:
 

 *171
 
 1. The Defendant is charged with multiple felonies related to alleged sexual assaults that took place with three alleged victims in 1991.
 

 2. There is DNA evidence in all three cases which has been tested by the State and purports to link the Defendant to the alleged crimes.
 

 3. Defendant seeks to have the DNA evidence retested by a defense expert.
 

 4. Previously appointed counsel for the Defendant retained the services of a DNA expert, Dr. Noureddine.
 

 5. Dr. Noureddine reviewed the DNA analysis performed by the State and took exception to the some of the procedures followed by the State, but did not conclude that the DNA analysis, had it been performed differently, would have reached a different result.
 

 6. Dr. Noureddine did not recommend the use of a new, more accurate testing procedure that was not available at the time of the State's DNA test.
 

 A trial court's determination as to whether to provide funding for expert evaluation of evidence rests within the trial court's discretion and will not be disturbed absent a showing of abuse of that discretion.
 
 State v. Gardner
 
 ,
 
 311 N.C. 489
 
 , 498-99,
 
 319 S.E.2d 591
 
 , 598 (1984). Defendant argues that the trial court abused its discretion and challenges the evidentiary support for the trial court's statements in Findings Nos. 5 and 6, that Dr. Noureddine "did not conclude that the DNA analysis, had it been performed differently, would have reached a different result" and that Dr. Noureddine "did not recommend the use of a new, more accurate testing procedure that was not available at the time of the State's DNA test." Defendant argues that because "Dr. Noureddine's report finds procedures, analysis and conclusions of the CMPD crime laboratory to be contrary to accepted scientific practice, suggests re-testing evidence and finds one conclusion to be overreaching and absurd, the court's findings of fact and conclusions of law are incorrect." However, the criticisms that defendant notes from Dr. Noureddine's report do not identify any statement or conclusion by Dr. Noureddine either that "the DNA analysis, had it been performed differently, would have reached a different result," or that there currently exists "a new, more accurate testing procedure that was not available at the time of the State's DNA test." As a result, defendant's contentions do not establish that the trial court's findings were not supported by the evidence.
 

 *172
 
 Dr. Noureddine had several criticisms of the procedures and methodology employed by the State's analysts, including the following:
 

 1. Dr. Noureddine criticized the lab for performing the analysis of two cases at the same time, because this might increase the chance of contamination.
 

 2. Dr. Noureddine criticized the quality of the DNA sample obtained from Patricia and suggested that the lab should have "considered" repeating the analysis of the cheek swab from Patricia.
 

 3. Dr. Noureddine criticized the terminology used by the State lab in characterizing a particular DNA profile as a "major contributor" instead of a "partially predominant" contributor and in using the term "match" to describe the relationship between Louise's DNA and that found in the evidence from Louise's case.
 

 4. In Patricia's case, Dr. Noureddine was concerned about whether the samples had been properly sealed.
 

 In Dr. Noureddine's report, he summarized the procedures used to conduct the DNA analysis and noted that in each case the State had made statistical calculations regarding the match between defendant's DNA and that obtained from the evidence collected in 1991. Significantly, in his report Dr. Noureddine does not express any doubt or concern regarding the statistical conclusions
 
 *187
 
 reached by the State. In other words, Dr. Noureddine's report does not dispute the ultimate conclusion reached in each case that it was statistically all but impossible for anyone other than defendant to have been the source of the DNA profiles obtained from the evidence. Instead, Dr. Noureddine's "Final Conclusion" is that "[b]ased on the forensic DNA and serology evidence that was developed by the CMPD Lab for case #s 1991-0507-040800, 1991-0716-000400, and 1991-0812-042601, it is my conclusion that Mr. Thompson cannot be excluded as a potential contributor of DNA in all three cases."
 

 We conclude that the trial court accurately summarized the results of Dr. Noureddine's analysis and did not abuse its discretion by denying defendant's motion seeking funds with which to hire an expert to retest the DNA samples.
 

 IV. Instruction on Acting in Concert
 

 Finally, defendant argues that the trial court committed plain error by instructing the jury in such a manner that defendant "could be found
 
 *173
 
 guilty either by acting by himself or acting together with another in violation of the prohibition against double jeopardy." Defendant cites
 
 State v. Graham
 
 ,
 
 145 N.C.App. 483
 
 ,
 
 549 S.E.2d 908
 
 (2001), in support of his contention. However, in
 
 Graham
 
 , the verdict sheets submitted to the jury included one verdict sheet asking the jury to determine whether the defendant was guilty of committing a particular offense alone and another, separate, sheet asking the jury to decide whether the defendant was guilty of the same offense, either acting alone or with another. On the facts of
 
 Graham
 
 , the jury might have convicted the defendant twice for the same offense, once for acting alone and once for acting either alone or with another. No such circumstance is present in this case.
 

 For the reasons discussed above, we conclude that defendant had a fair trial, free of reversible error.
 

 NO ERROR.
 

 Judges STEPHENS and McCULLOUGH concur.
 

 [1]
 

 To preserve the privacy of the victims, we will use pseudonyms in this opinion.