BRYANT, Judge.
Where defendant Jerry Lewis Oglesby challenges the admission of 404(b) evidence, statements made for purposes of medical diagnosis or treatment, statements corroborating sexual acts, and instructions to the jury-all related to his convictions for, inter alia , second-degree rape and second-degree sexual offense, in this cold case-we find there was no error committed at trial and affirm the judgment of the trial court.
On 12 January 2015, a Mecklenburg County grand jury indicted defendant on charges of common law robbery, felonious breaking and entering, second-degree sexual offense, and second-degree rape stemming from an assault which occurred on 28 November 1985. The matter came on for trial during the 5 June 2017 criminal session of Mecklenburg County Superior Court, the Honorable Jesse B. Caldwell, Judge presiding.
The evidence presented at trial tended to show that on Thursday, 28 November 1985, Samantha[1] was working at a Holiday Inn in Charlotte near Interstate 85. Samantha had been contracted to re-glaze bathtubs. That afternoon as she headed down a hallway leading to a guest room in which she would work, Samantha encountered an African-American man, possibly over six-feet tall. "He asked me if I knew where the parties were. And I said no. I was there to do work." Samantha kept walking and did not see where the man went. She entered the guest room and closed the door behind her. Moments later, while in the bathroom preparing to place caulk around a bathtub, Samantha heard a door lock and turned to see the man she'd passed in the hallway standing in the bathroom.
Samantha testified that he grabbed her and hit her head on something in the bathroom. He forced her to the bed and gripped her throat so tightly that she couldn't breathe. Samantha testified that her attacker's penis penetrated her vagina and that she could not remember whether he conducted any other sexual acts.
When the assault was over, the man removed Samantha driver's license and twenty dollars from her pants' pocket. He threw the license on the floor, kept the twenty dollars, and told Samantha not to leave the room. When she felt it was safe, Samantha ran to the hotel's front desk for help.
Dorothy Miller, an employee working at Holiday Inn on 28 November 1985, sat with Samantha while waiting for the law enforcement officers to arrive. Miller testified that Samantha disclosed what happened to her, including that her attacker forced her to perform fellatio.
From the Holiday Inn, Samantha was transported to the emergency room at Charlotte Memorial Hospital Medical Center (Charlotte Memorial Hospital). At trial, Dr. John Baker testified that on 28 November 1985, he was working in the emergency department at Charlotte Memorial Hospital. A hospital report that he filled out that day stated that Samantha was admitted at 7:15 p.m. and was coded as a sexual assault. According to Dr. Baker's report, Samantha reported penile penetration of her mouth and vagina. As a result, she was treated for possible infection and sexually transmitted diseases.
Another woman (hereinafter Cathy[2] ) testified to a sexual assault which occurred on 24 August 1986, which testimony was admitted as evidence of other bad acts. Cathy identified defendant at trial and testified that he broke into her home, forced her to perform fellatio and vaginal intercourse, and before leaving, took her purse stating that he needed money.
Defendant did not present any evidence.
The jury returned guilty verdicts against defendant for second-degree rape, second-degree sexual offense, felonious breaking and entering, and common law robbery. In accordance with the jury verdict, the trial court sentenced defendant pursuant to the Fair Sentencing Act to consecutive sentences of 40 years for second-degree rape, 40 years for second-degree sexual offense, 10 years for breaking and entering, and 10 years for common law robbery. Defendant appeals.
_________________________
Defendant argues that the trial court erred by admitting evidence of other bad acts pursuant to Rule 404(b) where (I) the acts were dissimilar and the danger of unfair prejudice substantially outweighed its probative value. Defendant argues that the trial court erred by (II) admitting an out-of-court statement pursuant to Rule 803(4), (III) admitting a hearsay statement to corroborate another out-of-court statement, and (IV) denying defendant's request for an instruction on attempted second degree rape.
I
Defendant argues that the trial court erred by admitting evidence of other bad acts pursuant to Rule 404(b) where the acts were not sufficiently similar to the charged acts. More specifically, defendant contends that the trial court found only generic similarities between the charged act and the bad acts admitted to show Samantha's lack of consent, defendant's modus operandi, motive, intent, and plan. Defendant also contends that the admission of the 404(b) evidence was error where it failed to survive the test of Rule 403, as it was substantially more prejudicial than probative. We disagree.
Analysis
Pursuant to Rule 404 of our Rules of Evidence,
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, 404(b) (2017). Our Supreme Court has observed that cases decided under Rule 404(b) provide "a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant ...." State v. Coffey , 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). "[E]vidence admitted under Rule 404(b) should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused." State v. Carpenter , 361 N.C. 382, 387, 646 S.E.2d 105, 109 (2007) (quoting State v. Al-Bayyinah , 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) ). "To effectuate these important evidentiary safeguards, the rule of inclusion described in Coffey is constrained by the requirements of similarity and temporal proximity." Al-Bayyinah , 356 N.C. at 154, 567 S.E.2d at 123 (citations omitted).
This Court has stated that "remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." State v. Stager , 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991).... Moreover, as to the "similarity" component, evidence of a prior bad act must constitute " 'substantial evidence tending to support a reasonable finding by the jury that the defendant committed [a] similar act.' " Al-Bayyinah , 356 N.C. at 155, 567 S.E.2d at 123 (quoting Stager , 329 N.C. at 303, 406 S.E.2d at 890 (alteration in original)). "Under Rule 404(b) a prior act or crime is 'similar' if there are 'some unusual facts present in both crimes. ...' " Stager , 329 N.C. at 304, 406 S.E.2d at 890 (citations omitted).
Carpenter , 361 N.C. at 388, 646 S.E.2d at 110. However, "[w]e do not require that the similarities 'rise to the level of the unique and bizarre.' " State v. Beckelheimer , 366 N.C. 127, 131, 726 S.E.2d 156, 159 (2012) (quoting State v. Green , 321 N.C. 594, 604, 365 S.E.2d 587, 593 (1988) ).
"North Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges." State v. Patterson , 150 N.C. App. 393, 397, 563 S.E.2d 88, 90 (quoting State v. Jacob , 113 N.C. App. 605, 608, 439 S.E.2d 812, 813 (1994) (allowing evidence that the defendant had sexually abused the victim and her stepsister)), aff'd , 356 N.C. 606, 572 S.E.2d 780 (2002).
In the instant case, defendant argues that "[t]he differences between the two incidents are so significant they undermine the similarities found by the trial court." However, the trial court found both incidents involved white females of similar ages, both victims were attacked after a breaking and entering or burglary, both attacks consisted of forcible rape and fellatio, a robbery took place after the sexual assault, both victims exhibited bruises or abrasions on her head and/or neck, defendant was a stranger to both victims, defendant did not wear a mask when he attacked either victim, both victims were moved from the place or room where they were initially attacked. Also, the location of both attacks was along the I-85 corridor and occurred approximately nine months apart. The record evidence admitted by the trial court meets the requirements of similarity and temporal proximity. See Al-Bayyinah , 356 N.C. at 154, 567 S.E.2d at 123.
"[I]f the propounder of the evidence is able to establish that a prior bad act is both relevant and meets the requirements of Rule 404(b), the trial court must balance the danger of undue prejudice against the probative value of the evidence, pursuant to Rule 403." Carpenter , 361 N.C. at 388-89, 646 S.E.2d at 110. Per Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. 8C-1, Rule 403 (2017).
Defendant's argument that the admission of Cathy's testimony was substantially more unfairly prejudicial than probative, in violation of Rule 403, is predicated on the perspective that the attacks on Samantha and Cathy were substantially dissimilar. As stated above, we disagree. The trial court found "that the relevance of [Cathy's testimony] and the probative value of this evidence [wa]s not substantially outweighed by danger of unfair prejudice to the defendant." We agree and uphold this ruling.
The trial court concluded the evidence was "admissible to show the victim's lack of consent, defendant's modus operandi, motive, intent, and plan." We hold that Cathy's testimony satisfied the requirements of Rule 404(b) and was not admitted in violation of Rule 403. Accordingly, we overrule defendant's argument.
II
Next, defendant argues that the trial court erred by admitting a hearsay statement pursuant to Rule 803(4) ("Hearsay exceptions; availability of declarant immaterial"; "Statements for Purposes of Medical Diagnosis or Treatment"), where the State failed to establish that it was made for the purposes of medical diagnosis or treatment. We disagree.
"We review de novo the trial court's determination of whether an out-of-court statement is admissible pursuant to N.C.R. Evid., Rule 803." State v. Wilson , 197 N.C. App. 154, 159, 676 S.E.2d 512, 515 (2009) (citation omitted) (citing State v. Hinnant , 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) ).
(a) ... A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
....
(c) ... "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
N.C. Gen. Stat. § 8C-1, Rule 801(a), (c) (2017). "Hearsay is not admissible except as provided by statute or by these rules." Id. § 8C-1, Rule 802.
[However,] [t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:
....
(4) Statements for Purposes of Medical Diagnosis or Treatment.--Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Id. § 8C-1, Rule 803. " Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." Hinnant , 351 N.C. at 284, 523 S.E.2d at 667 (citing State v. Aguallo , 318 N.C. 590, 595-97, 350 S.E.2d 76, 80-81 (1986) ; accord United States v. Iron Shell , 633 F.2d 77, 83 (8th Cir.1980) (federal rule)).
Dr. Baker testified to his observations and medical treatment of Samantha following her admission to the hospital on 28 November 1985. While Dr. Baker had no independent recollection of Samantha's examination and treatment from more than twenty years before trial, he was able to identify and confirm the emergency department medical record documenting the examination as one he performed.
Well, obviously the stuff that's typed was prepared by a secretary when the patient was admitted to the emergency department. The vital signs were provided by a nurse, who has signed her name to the area where she did the vital signs. And then all the rest of that on that first page is mine.
Samantha was admitted to Charlotte Memorial Hospital on 28 November 1985 at 7:15 p.m. The Emergency Department medical record indicated a "Code 600"-a term indicating a sexual assault exam, including the processing of a rape kit.
Q. And would you have a nurse assigned to you to assist you?
A.....
At the later parts of the exam, just to clarify, when we went in to actually do the exam and harvest materials for the rape kit, we would take a nurse that was experienced in the matters and had done them before. And we would pull her from wherever she was, and she would be assigned to do nothing but that case.
Q. And when you, when you first came into contact with a patient under the Code 600 scenario can you describe for us how you would handle the patient, you and the nurse, at that point?
A. Well, at that point the patient would be in a room. And would probably be in a gown to -- and I would come introduce myself. We would shake hands. We'd talk. We would try to develop -- you know, any rapport you develop over five minutes is relatively limited, but we would try to develop a rapport with the patient. And then try to clarify what her desires were. I mean besides being examined and taken care of.
Q. And you had mentioned a rape kit earlier. At what point does that come into the conversation with you and the patient and the nurse?
A. It usually would be on that very -- the very beginning. Most of the time the patient had already had contact with professionals, the police or others, and knew that it -- that the possibility was that we would ask her if she wanted to participate in harvesting evidence.
Q. All right. And are -- in addition to harvesting evidence are you also interested in checking out the patient to make sure there are no other injuries?
A. Well, that's the beginning. I mean, that's the, that's the basic of the, of the process is to just take care of the patient. However, it's a comprehensive thing. We need to take care of the patient physically, psychologically, and it's all intertwined, right? I mean, it's all intertwined with the evaluation because she was assaulted.
....
Q. All right. What else did you write, if anything?
A. "Hematoma of the occipital scalp," which is back here. (Indicating.)
Q. And for the record, you're referring to the back of your head?
A. Correct.
....
A.... Hematoma is just simply blood underneath the skin. Which is almost, almost always caused by a blow to the head. Or hitting the -- the head hitting something like the floor. Something hard.
....
Q. Now, part of the process of having the patient come before you and going through -- I think you've already given some description -- is the formal taking of information in medical parlance called "taking a history"?
A. Yes.
....
Q. And it says: "Give a brief account of the assault and description." And what, if anything, did you write there?
A. "The assault occurred on a bed at the Holiday Inn."
....
Q. Okay. And as part of taking the history - and this information is coming to you from [Samantha] herself?
A. Yes
At this point, defendant objected to the testimony of Dr. Baker that would (for the first time) introduce evidence of fellatio. During a voir dire examination of Dr. Baker conducted out of the presence of the jury, defendant sought testimony as to the purpose of the information recorded and the specimens taken and stored in Samantha's rape kit.
Q. Yes, sir. And the purpose of conducting - or using the rape kit or filling out this form is to be used for any subsequent prosecution, right?
A. Well, I mean, the reason, the reason for the forms is so that you have uniformity. And that the, the -- that, that the exam is carried out much the same way, whether it's in Carolinas Medical Center, or it's in Raleigh, or wherever. Yes, I'm not exactly sure what you're asking.
Q. Yes, sir. I'll ask a different question. Once the forms that you took out of the rape kit, once they're complete they're placed back in the rape kit, right?
A. Yes.
Q. Okay. And the rape kit is eventually picked up by a law enforcement officer, correct?
A. Yes.
Q. Meaning it's no longer in control of Charlotte Memorial Hospital?
A. Correct.
Q. All right. Thank you.
The prosecutor asked Dr. Baker if the sole purpose of the examination was to preserve evidence for law enforcement purposes.
Q. Dr. Baker, you've already indicated where the form comes from. Is the sole purpose of this form to be used for future prosecution and collection of evidence?
A. Well, most of it is, but, but some of it actually -- towards the end they want to make sure that the patient was offered, you know, a -- some form of birth control possibilities. And antibiotics for a possible STD. So that's actually on this form.
Q. Okay.
A. At least I think it is. It should be. And -- well. Well, actually I'm not sure it is. But it's, it's -- somewhere in the code was, was what was the standard process, and she got both.
....
Q.... These questions that you were asking her and the responses that you were getting from her, were those done for the purposes of medical diagnosis and treatment as well as anything else related to collection of evidence?
A. Yes. I mean, it was both. It was obviously where to look for both injury that happened, as, as well as evidence. Both. I mean designed to take care of both.
Q. And do you find these questions are pertinent to medical diagnosis and treatment?
A. Sure. Yes.
Following arguments by counsel for both parties regarding the applicability of Rule 803(4) (allowing the admission of hearsay statements made for purposes of medical diagnosis or treatment as evidence), the trial court ruled that the medical report authored by Dr. Baker contemporaneous with his examination of Samantha on 28 November 1985 was admissible as an exception to the hearsay rule.
On appeal, defendant argues "that some of the questions and answers on [the rape kit questionnaire] were designed for the purposes of medical treatment or diagnosis, while others were designed for the collection of evidence of future prosecution." Defendant argues that Samantha's statement that her assailant put his penis in her mouth was not established to be in response to a question presented to aid in medical diagnosis or treatment but to elicit evidence for future prosecution.
Dr. Baker testified that the questionnaire and forms included in the kit were designed to aid with medical diagnosis and evidence collection and to promote uniformity in how the examinations were administered. In response to Dr. Baker's questions from the rape kit questionnaire, Samantha was provided both birth control and antibiotics to guard against STDs. Thus, we hold the trial court did not err by allowing Dr. Baker's testimony as to Samantha's recorded responses to the questionnaire, including responses that she was forced to perform fellatio, as properly admitted in accordance with Rule 803(4) ("Statements for Purposes of Medical Diagnosis or Treatment"). Defendant's argument is overruled.
III
Defendant argues that the trial court erred or alternatively committed plain error by admitting hearsay statements testified to by Miller to corroborate hearsay statements testified to by Dr. Baker. More specifically, defendant contends that Miller's testimony-that Samantha stated defendant forced her to perform fellatio-was improperly admitted to corroborate Dr. Baker's testimony, that per his medical record, Samantha reported performing fellatio as part of being assaulted. Further, defendant contends that Miller's testimony contained additional evidence which resulted in defendant's second-degree sexual assault conviction. We disagree.
Corroborating Statements
Defendant contends that the trial court erred by admitting Miller's testimony regarding an out-of-court statement made by Samantha to corroborate Samantha's out-of-court statement to Dr. Baker that she performed fellatio. In support of his argument, defendant cites State v. Gell , 351 N.C. 192, 524 S.E.2d 332 (2000), and State v. Demos , 148 N.C. App. 343, 559 S.E.2d 17 (2002).
Both Gell (heard before our Supreme Court) and Demos (heard before this Court) held that a witness's out-of-court statement was admissible to corroborate that witness's in-court testimony. Gell , 351 N.C. at 204, 524 S.E.2d at 340 ; Demos , 148 N.C. App. at 347, 559 S.E.2d at 20. However, defendant fails to provide any authority which precludes the admission of an out-of-court statement offered as corroborative evidence for substantive evidence admitted by another witness. Cf. State v. Adams , 331 N.C. 317, 328-29, 416 S.E.2d 380, 386 (1992) ("Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness." (quoting State v. Rogers , 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980) )); see also State v. Smith , 315 N.C. 76, 82-83, 337 S.E.2d 833, 838 (1985) ("It is only when the evidence is inadmissible for substantive ... purposes, and its sole claim to competence is to enhance credibility, that resort must be had to the special rules and policies relative to corroboration." (alteration in original) (citation omitted)). See generally State v. Blair , 181 N.C. App. 236, 245, 638 S.E.2d 914, 920 (2007) ("A trial court has 'wide latitude in deciding when a ... statement can be admitted for corroborative, non [-]hearsay purposes.' " (second alteration in original) (quoting State v. Call , 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998) )).
In State v. Thompson , --- N.C. App. ----, 792 S.E.2d 177 (2016), the State presented evidence that three times between May and August 1991 two men kidnapped a woman, blindfolded her, drove her to a motel, and sexually assaulted her. Each victim reported the assault to a law enforcement officer and received medical care. In 2012, forensic DNA tests revealed a match between the defendant and evidence collected from the victims. The defendant was charged, and a trial commenced in August 2015. Id. at ----, 792 S.E.2d at 179. At trial, two of the three victims were unavailable (deceased). Pursuant to Rule 803(4), the trial court admitted into evidence statements made by each victim recorded in 1991 by healthcare professionals who treated the victims shortly after the reported assaults. Id. at ----, 792 S.E.2d at 181. On appeal, the defendant did not challenge the admission of the testifying victim's statements to the healthcare professionals, but did challenge the admissibility of statements made by the two deceased victims (unavailable witnesses) to an investigating law enforcement officer. The defendant argued that the statements made to the law enforcement officer-admitted as statements corroborating those made to the healthcare professionals-were improperly admitted. Id. at ----, 792 S.E.2d at 181. Upon review of the transcript, the Court concluded "the challenged statements me[t] the requirements for admission as corroborative evidence." Id. at ----, 792 S.E.2d at 181.
Here, Miller testified to statements Samantha made to Miller following Samantha's assault. At trial, Miller's testimony regarding Samantha's statements was proffered as corroborative evidence for statements Samantha made to Dr. Baker, statements which were properly admitted as statements made for purposes of medical diagnosis or treatment and were substantive evidence. On voir dire, the trial court considered the statement Miller wrote in her 1985 police statement as well as the arguments of counsel as to whether Samantha's out-of-court statements to Miller were admissible as corroborative evidence of Dr. Baker's testimony. The trial court concluded that "the conversation [between Miller and Samantha] is admitted for corroboration" of Dr. Baker's testimony. Upon review of the transcript, we agree and hold "the challenged statements meet the requirements for admission as corroborative evidence." Id. at ----, 792 S.E.2d at 181. See also Adams , 331 N.C. at 328-29, 416 S.E.2d at 386 ; Smith , 315 N.C. at 82-83, 337 S.E.2d at 838. On the point of the admissibility of Miller's testimony as corroborative evidence, defendant's argument is overruled.
Additional Information in Corroborating Statement
Defendant also argues that Miller's statements admitted as corroborative evidence improperly contained new, prejudicial information that constituted substantive evidence. Defendant contends that Dr. Baker's testimony regarding Samantha's 1985 rape kit questionnaire provided that Samantha performed fellatio, while Miller's testimony admitted as corroborative evidence "contained additional information that [defendant] used physical force to get [Samantha] to perform fellatio on him." Defendant contends that this evidence of force is the only evidence that satisfies the criteria of force necessary to support defendant's conviction for second-degree sexual offense.
[T]he mere fact that a corroborative statement contains additional facts not included in the statement that is being corroborated does not render the corroborative statement inadmissible:
"In order to be admissible as corroborative evidence, a witness' prior consistent statements merely must tend to add weight or credibility to the witness' testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates." Moreover, "if the previous statements are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations ... affect [only] the credibility of the statement."
State v. Walters , 357 N.C. 68, 88-89, 588 S.E.2d 344, 356-57 (2003) (quoting State v. Farmer , 333 N.C. 172, 192, 424 S.E.2d 120, 131 (1993), and State v. Martin , 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983) ).
Thompson , --- N.C. App. at ----, 792 S.E.2d at 182-83 ; see also Gell , 351 N.C. at 204, 524 S.E.2d at 340 ("[I]n order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony." (citations omitted)); Adams , 331 N.C. at 329, 416 S.E.2d at 386 ("Where testimony which is offered to corroborate the testimony of another witness does so substantially, it is not rendered incompetent by the fact that there is some variation. It is the responsibility of the jury to decide if the proffered testimony does, in fact, corroborate the testimony of another witness." (citation omitted)).
Upon review, we hold that Miller's corroborating statement about Samantha being forced to perform fellatio was generally consistent with the statements included in Dr. Baker's medical report and tended to strengthen or add credibility to Dr. Baker's testimony. Therefore, we hold no error in the trial court's admission of Miller's statement as corroboration. We overrule defendant's argument.
IV
Lastly, defendant argues that the trial court erred by denying his request for an instruction on attempted second-degree rape. Defendant contends that there was conflicting evidence on whether a rape occurred or was merely attempted; therefore, the trial court was required to give an instruction. We disagree.
A trial court must instruct the jury on a lesser-included offense, if there is evidence the defendant might be guilty of the lesser-included offense. If the State's evidence is clear and positive as to each element of the charged offense, and if there is no evidence of the lesser-included offense, there is no error in refusing to instruct on the lesser offense.
State v. Hole , 240 N.C. App. 537, 540, 770 S.E.2d 760, 763 (2015) (citations omitted).
Samantha provided the following testimony:
Q. All right. And did any part of his body penetrate your body?
A. Yes.
....
Q. All right. And what part of his body was he pushing into you?
A. His penis.
Q. And where was he inserting it?
A. Into my vagina.
Dr. Baker testified that during the course of his examination, he conducted a vaginal swab and collected live, motile sperm. Deputy Sheriff French, who had analyzed bodily fluid-semen, blood, and saliva-for the Charlotte-Mecklenburg Police Department, testified that he tested the vaginal specimen from Samantha's rape kit and found a DNA match with the known specimen taken from defendant. French testified to the statistical strength of the match by stating that "the chance of finding a random, unrelated person in the general population [whose DNA would match the DNA obtained from the semen collected during the vaginal swabs] would be 1 in 13 quadrillion."
Defendant contends that there was evidence defendant did not penetrate Samantha's vagina. Defendant relies on Miller's conversation with Samantha where Samantha stated that defendant did not achieve an erection. However, this alone is not evidence that penetration did not take place. See State v. Williams , 314 N.C. 337, 352, 333 S.E.2d 708, 718 (1985) ("The simple fact that a person struggles to accomplish some feat, taken by itself, implies neither success nor failure. The fact that defendant 'struggled to penetrate' is far from equivocal and in no way negates a completed act. ... While penetration is best achieved when there is an erection, by no means can penetration to the degree necessary to satisfy the penetration element of rape be excluded because there is no erection." (citation omitted)). Miller's testimony was not evidence that penetration-necessary to satisfy the penetration element of rape-was not achieved. And, evidence of semen taken from vaginal swabs is some evidence of penetration. Thus, we hold the trial court did not err by denying defendant's request for an instruction on attempted second-degree rape. Accordingly, we overrule defendant's argument.
NO ERROR.
Report per Rule 30(e).
Judges DIETZ and INMAN concur.

A pseudonym has been used to protect the identity of the victim.

A pseudonym is used to protect the identity of a sexual assault survivor.